# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 15-1380V

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * <br> ANSEL WALTERS *and* SHAKIMA DAVIS WALTERS, *Natural Parents of K.S.S.W.*, a minor, <br><br> Petitioners, <br><br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br> Respondent. <br> * * * * * * * * * * * * * * * * * * * * * * * * * | UNPUBLISHED <br><br> Special Master Katherine E. Oler <br><br> Filed: June 16, 2021 <br><br> Interim Attorneys' Fees and Costs |

*Phyllis Widman*, Widman Law Firm, LLC, Northfield, NJ, for Petitioner
*Julia Collison*, U.S. Department of Justice, Washington, DC, for Respondent

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On November 16, 2015 Ansel Walters and Shakima Davis Walters ("Petitioners") filed a petition for compensation on behalf of their minor son K.S.S.W. under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq*.[2] (the "Vaccine Act" or "Program") alleging that K.S.S.W. suffered from encephalopathy as a result of the DTaP vaccine he received on January

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I intend to post this Decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). **This means the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

1

16, 2013. Pet. at 1, ECF No. 1. At the time, Petitioners were represented by Ms. Carol Gallagher.

On August 9, 2020, Petitioners filed an application for interim attorneys' fees and costs, totaling $107,838.56. Fees App. at 11, ECF No. 101. On August 10, 2020, Respondent filed a response stating it is within my discretion to award interim attorneys' fees and costs. Fees Resp., ECF No. 103. Respondent "defers to [me] to determine whether or not petitioner here has met the legal standard for interim fees and costs award." *Id.* at 2.

For the reasons discussed below, I hereby **GRANT IN PART** Petitioner's application and award a total of **$74,201.96** in interim attorneys' fees and costs.

I. **Legal Standard**

A. **Interim Attorneys' Fees and Costs**

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.*, 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs if the special master finds that a petitioner has brought his petition in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148 (2012), at 154; *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special

2

Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

### B. Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### C. Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. Aug. 19, 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

3

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II. Discussion

### A. Undue Financial Hardship

The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by petitioner's counsel. *Kirk*, 2013 WL 775396, at *2 (finding "the general principle underlying an award of interim fees was clear: avoid working a substantial financial hardship on petitioners and their counsel."). As of today, Petitioner and her lawyers have been litigating this case for over three years, and Ms. Gallagher began working on the case in 2016, approximately five years ago.

In *Woods v. Sec'y of Health & Hum. Servs.*, the Court of Federal Claims recognized that an award of interim fees is appropriate where a petitioners' attorney is withdrawing. 105 Fed. Cl.

148, 154 (Fed. Cl. 2012); *see also Golm v. Sec'y of Health & Hum. Servs.*, No. 11-557V, 2013 U.S. Claims LEXIS 1009 (Fed. Cl. Spec. Mstr. July 7, 2013) (same). Special Masters have routinely awarded interim fees to Petitioner's original counsel when they are proceeding through litigation with new representation. *See Putnam v. Sec'y of Health & Hum. Servs.*, No. 16-1273V, 2017 U.S. Claims LEXIS 963 at *5 (Fed. Cl. Spec. Mstr. July 18, 2017); *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 U.S. Claims LEXIS 446 (Fed Cl. Spec. Mstr. Mar. 28, 2012) (same).

Successive motions for awards of interim fees are typically disfavored absent compelling circumstances. *See e.g. Kottenstette v. Sec'y of Health & Hum. Servs.*, No. 15-1016V, 2019 WL 5709372, at *2 (Fed. Cl. Spec. Mstr. Oct. 11, 2019) (granting a second interim fee award only in light of a motion for review which would inevitably add "an indefinite period of…litigation before…resolution of the case); *Heinzelman v. Sec'y of Health & Hum. Servs*, No. 07–01V, 2012 WL 1119389 (Fed. Cl. Spec. Mstr. Mar. 13, 2012) (Petitioner was not entitled to a third award of interim attorneys' fees because she failed to establish the special circumstances needed for such an award); *see also Otto v. Sec'y of Health & Hum. Servs.*, No. 16-1144, 2020 WL 1304189 (Fed. Cl. Spec. Mstr. Feb. 10, 2020) (holding that granting successive interim awards strains judicial resources and is contrary to the underlying intent of the Vaccine Act). To demonstrate undue hardship, a Petitioner must demonstrate a *compelling* reason for a successive award of interim fees and costs.

Although an award of interim fees has already been granted, Ms. Gallagher is no longer representing Petitioner in this case. Due to the nature of the Vaccine Program, it is difficult to know how long it will take for a petition to reach resolution. Thus, it is difficult to gauge how long Ms. Gallagher would have to wait for payment if she were unable to recover for attorneys' fees and costs until after the case has concluded. This uncertainty, combined with the amount of time this case has been in litigation, constitute an undue hardship that entitles Ms. Gallagher to an interim fees award.

I also note that the COVID-19 pandemic has had a significant impact on the United States economy and such impact has been recognized by this court*. See Monge-Landry v. Sec'y of Health & Hum. Servs*, No. 14-853V, 2020 U.S. Claims LEXIS 1250 at *14-*15 (Fed. Cl. Spec. Mstr. Jun. 30, 2020) (recognizing the COVID-19 pandemic's continued disruption of the airline industry in its calculation of appropriate interim fees). Given these unprecedented economic circumstances, and the time already spent litigating this case, I find that the Petitioner would suffer undue hardship in the absence of a second award of attorneys' fees and costs.

### B. Good Faith and Reasonable Basis

As discussed above, the threshold for reasonable basis is a much lower standard than the burden to prove entitlement to compensation by preponderant evidence. In making a reasonable basis determination, I must look at a totality of circumstances, taking into account the factual basis for the claim, and the medical and scientific support offered. Petitioners have filed extensive medical records and expert reports from Dr. Shafrir and Dr. Akbari. *See* Exs. 1-32, 35, 89, 143. The medical records and expert reports constitute sufficient evidence to justify the filing of this petition, thus I find the petition was filed in good faith with a reasonable basis.

5

### C. Attorneys' Fees

Petitioner requests a total of $32,016.00 in attorneys' fees. *See generally* Fees App. at 4; Fees App. Ex. A at 1-11.

1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

Petitioner's former counsel, Ms. Gallagher, requests to be compensated at a rate of $400 per hour for work performed in 2019 and $424 per hour for work performed in 2020. *See* Fees App. at 4. These rates are consistent with the Fee Schedule and with what Ms. Gallagher has been awarded in the past. *See Murray v. Sec'y of Health & Hum. Servs.*, No. 19-424V, 2021 U.S. Claims LEXIS 883 (Fed. Cl. Spec. Mstr. May 10, 2017); *Wunderler v. Sec'y of Health & Hum. Servs.*, No. 19-1468V, 2020 U.S. Claims LEXIS 2873 (Fed. Cl. Spec. Mstr. Dec. 1, 2020); *Walker v. Sec'y of Health & Hum. Servs.*, 18-366V, 2020 U.S. Claims LEXIS 2610 (Fed. Cl. Spec. Mstr. Nov. 24, 2020). I find the requested rates to be reasonable and that no adjustment is warranted.

2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours);

---

[3] The 2019 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.
The 2020 Fee Schedule can be accessed at:
http://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202020.PPI_OL.pdf
The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.

6

*Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g., McCulloch*, 2015 WL 5634323, at *26.

Petitioners' counsel has provided a breakdown of hours billed and costs incurred. Fees App. at 37-158. I find the hours to be largely reasonable, however I find a small reduction is appropriate for time billed by Ms. Gallagher for administrative tasks, such as reviewing CM/ECF notifications, preparing emails of a secretarial nature and reviewing invoices. In particular, Ms. Gallagher billed several entries in 2020 for the scheduling and re-scheduling of the hearing held in this case. Billing for administrative tasks is not appropriate. *See Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature … should be considered as normal overhead office costs included within the attorneys' fee rates"); *see also Mostovoy v. Sec'y of Health & Hum. Servs.*, No. 02-10, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016) (citing "reviewing invoices, setting up meetings, and making travel arrangements" as examples of administrative tasks); *Macrelli v. Sec'y of Health & Hum. Servs.*, No. 98–103, 2002 WL 229811, at *7 (Fed. Cl. Spec. Mstr. Jan. 30, 2002) (stating that "time spent performing secretarial tasks is to be subsumed in the overhead costs of practicing law and is not reimbursable"); *Isom v. Sec'y of Health & Hum. Servs.,* No. 94–770, 2001 WL 101459, at *2 (Fed. Cl. Spec. Mstr. Jan. 17, 2001) (agreeing with respondent that tasks such as filing and photocopying are subsumed under overhead expenses).

The entries that are secretarial in nature in 2019 are on 2/26/19 (0.1 hours). 3/6/2019 (0.1 hours), 3/11/19 (0.1 hours), 3/28/19 (0.1 hours), 4/30/19 (0.2 hours), 5/2/19 (0.25 hours), 5/8/2019 (0.4 hours), 5/16/19 (0.1 hours), 6/6/19 (1.2 hours), 6/7/19 (0.1 hours), 6/26/19 (0.35 hours), 7/24/19 (0.3 hours), 7/25/19 (0.1 hours), 7/26/19 (0.15 hours), 7/29/19 (0.1 hours), 8/1/19 (0.1 hours), 8/13/19 (0.1 hours), 8/14/19 (0.1 hours), 8/20/19 (0.1 hours), 8/22/19 (0.1 hours), 11/25/19 (0.1 hours), 12/03/19 (0.1 hours), 12/18/19 (0.4 hours), for a total reduction of 4.75 hours, or $1,900.00.

The entries that are secretarial in nature in 2020 are on 2/18/20 (0.1 hours), 3/3/20 (0.15 hours), 3/17/20 (0.2 hours), 3/31/20 (0.15 hours), 4/2/20 (0.1 hours), 4/6/20 (0.1 hours), 4/8/20 (0.1 hours), 4/14/20 (0.15 hours), 5/7/20 (0.1 hours), 6/15/20 (0.4 hours), 6/16/20 (0.1 hours), 6/23/20 (0.1 hours), 6/26/20 (0.1 hours), 6/30/20 (0.4 hours), 7/8/20 (0.45 hours), 7/9/20 (0.2 hours), 7/10/20 (0.1 hours), 7/14/20 (0.2 hours), 7/28/20 (0.1 hours), and 7/29/20 (0.1 hours) for a total reduction of 3.4 hours, or $1,441.60.

Total attorneys' fees to be awarded: **$28,674.40.**

### D. Reasonable Costs

Petitioners request a total of $75,822.56 in costs, which includes (but is not limited to) medical records fees, legal research fees, and expert fees. A breakdown of Petitioners' costs is laid out in the ensuing sections. I have reviewed the supporting documentation and find this request to

7

be largely reasonable. Accordingly, I award costs in part. Before I provide analysis concerning Petitioners' expert costs, I want to ensure Ms. Gallagher recognizes that she must monitor the hours expended by her experts. Dr. Akbari billed over 130 hours for this case for the period of time between February 2019 and July 2020.[4] I do not believe the complexity of this case, which Petitioner alleges is an on-Table injury, warranted this amount of work and have adjusted the hours accordingly. *See Sicard v. Sec'y of Health & Hum. Servs.*, No. 16-332V, 2019 WL 6462385 at *6 (Fed. Cl. Spec. Mstr. Nov. 4, 2019) ("[P]etitioners and their experts are not given a "'blank check to incur expenses' to be paid by the Vaccine Trust Fund.").

1. Petitioners' Expert Costs for Dr. Omid Akbari

Petitioners request a rate of $550.00 per hour for 137.7 hours of work performed for a total of $75,735.00, which also includes Dr. Akbari's $5,000.00 retainer. Dr. Akbari has a Ph.D. in molecular and cellular immunology. Ex. 90 at 1. He is a Professor of Medicine and a Professor of Immunology at University of Southern California, USC, Keck School of Medicine. *Id.* Additionally, Dr. Akbari is an active researcher in the field of immune tolerance in triggering an autoimmune disease. *Id.* at 3. Despite Dr. Akbari's qualifications in immunology, he is not a medical doctor and lacks clinical experience. Dr. Akbari has been consistently awarded a rate of $500/hour by other special masters in the Program. *See Hernandez v. Sec'y of Health & Hum. Servs.*, No. 16-1508V, 2018 WL 4391060 (Fed. Cl. Spec. Mstr. Aug. 20, 2018); *Shinskey v. Sec'y of Health & Hum. Servs.,* No. 15-713V, 2019 WL 2064558 (Fed. Cl. Spec. Mstr. May 9, 2019); *Sheppard v. Sec'y of Health & Hum. Servs.*, No. 17-819V, 2020 WL 1027958 (Fed. Cl. Spec. Mstr. Feb. 20, 2020); *Bisceglia v. Sec'y of Health & Hum. Servs.*, No. 19-91V, 2020 WL 6146101 (Fed. Cl. Spec. Mstr. Sep. 20, 2020); *Robinson v. Sec'y of Health & Hum. Servs.*, No. 15-967V, 2018 WL 5629850 (Fed. Cl. Spec. Mstr. Sep. 12, 2018); cf. *Riley v. Sec'y of Health & Hum. Servs.*, No. 16-262V, 2020 WL 1026929 (Fed. Cl. Spec. Mstr. Feb. 6, 2020) (granting Dr. Akbari an expert rate of $300.00 per hour); *Lewis v. Sec'y of Health & Hum. Servs.*, 15-907V, 2020 WL 1283461 (Fed. Cl. Spec. Mstr. Feb. 20, 2020) (reaffirming Dr. Akbari's expert hourly rate of $300.00 per hour). I find that $500 per hour, as has consistently been awarded to Dr. Akbari to be an appropriate hourly rate.

As an initial matter, Dr. Akbari's invoice does not include line items for 24.1 hours of work. *See generally* Fees App., Ex. D. I therefore will not compensate him for these hours at this time.[5] The below analysis proceeds with a baseline of 113.6 hours.

Dr. Akbari provided a total of two reports between February 2019 and July 2020 (ECF Nos. 89 and 143), totaling roughly 23 pages (this includes his credentials, Petitioner's relevant medical history, diagrams, and a list of references). The substance of Dr. Akbari's reports is informative in that it provides his opinion regarding Petitioners' theory of causation; however, in my experience, the time Dr. Akbari spent preparing these reports is excessive. In preparation of

---

[4] I note that this time does not include time spent preparing for the hearing or testifying at the hearing.

[5] Petitioners may request compensation for these hours by submitting the appropriate substantiating information with their motion for final attorneys' fees and costs.

his first expert report, Dr. Akbari billed roughly 50 hours[6] to review medical literature and prior pleadings. *See* Fees Ex. D at 1-3. Many experts in the Program spend this much time conducting literature review and preparing multiple reports, not just on reviewing medical literature. *See K.B.H. v. Sec'y of Health & Hum. Servs.*, No. 17-1739V, 2021 WL 1344029 (Fed. Cl. Spec. Mstr. Jan. 8, 2021) (awarding Dr. Blitshteyn a total of 37.75 hours for four expert reports as well as literature review); *Jackson v. Sec'y of Health & Hum. Servs.*, No. 17-538V, 2019 WL 7560237 (Fed. Cl. Spec. Mstr. Nov. 15, 2019) (awarding $10,875.00 for costs associated with Dr. Steinman's four expert reports and associated literature review). While these cases are factually different from the case at bar, they document a more typical amount of time an expert spends in preparing and drafting a report. In addition to the over 50 hours spent researching materials to draft his first expert report (not including nine hours spent reviewing medical records), Dr. Akbari billed over 20 hours for the drafting, editing, highlighting of references cited in this first report.

For Dr. Akbari's second report (or first rebuttal report), he spent an additional eight hours researching medical literature and six hours preparing a five-page rebuttal report. *See* Fees Ex. D at 5-6. In total, Dr. Akbari spent over 110 hours to produce 23 pages. *See generally* Fees App. Ex. D. In my experience, this is well in excess of the time spent by other experts in cases of comparable complexity.[7]

Over the two reports, Dr. Akbari also spent roughly 15 hours[8] communicating with Petitioners' counsel, downloading documents, converting documents to pdf, and formatting his report. Such time is generally not compensable in the Vaccine Program. *See Lamar v. Sec'y of Health & Hum. Servs.*, 2008 U.S. Claims LEXIS 384 at *5 ("Ordinarily, an attorney should not bill for attorney time for tasks that a paralegal should perform, nor should he bill for paralegal time when the tasks involved are of a secretarial nature. The same general principles apply to compensating an expert consultant.")

In making reductions, a line-by-line evaluation of the fee application is not required. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (2011); *see also Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1991). Rather, special masters may "'render a decision based on general guidelines as to a reasonable fee'" in the context of the Vaccine Program and in the context of this case in particular. *Wasson*, 24 Cl. Ct. at 484. Additionally, an expert should be compensated only for the number of hours reasonably expended by the expert. *King ex*

---

[6] I note that, although Dr. Akbari's invoice states he spent time from March 12, 2019 to March 18, 2019 reviewing medical documents, the exhibits in question (37-88) are in fact medical literature cited by Dr. Shafrir in his report.

[7] This is not the first time Dr. Akbari has billed an excessive number of hours for his work on a case. *See, e.g.*, Reinhardt v. Sec'y of Health & Hum. Servs., 2021 U.S. Claims LEXIS 1074 at *11 (Fed. Cl. Spec. Mstr. Apr. 22, 2021). Future instances of overbilling will result in greater reductions.

[8] I note that several of Dr. Akbari's entries include time for multiple tasks, e.g., on November 24, 2019, Dr. Akbari spent 1.6 hours "finalizing the report, discuss[ing] additions to the report along with checking appropriate referencing, downloading PDF of references and highlighting the Ref, preparation of statement of submission, email communications." Fees App., Ex. D at 6. In such cases, I will credit Dr. Akbari with time spent drafting for one-half of the stated time.

*rel. King v. Sec'y of Health & Hum. Servs.*, No. 03–584V, 2010 WL 5470787*,* at \*4 (Fed. Cl. Spec. Mstr. Dec. 13, 2010) (indicating that counsel had a "duty to 'monitor the expert's overall fees to ensure that the fees remain reasonable.'"); *Hines ex rel. Sevier v. Sec'y of Dep't of Health & Human Servs.*, 22 Cl. Ct. 750, 754 (1991) ("The special master is within his discretion in reducing hours that are duplicative, padded, spent on unrelated matters, or not 'reasonably expended.'" (quoting *Griffin & Dickson v. United States*, 21 Cl. Ct. 1, 11 (1990))

Dr. Akbari has provided expert reports in a number of cases in the Program but I believe this is the first case where he offered an opinion involving encephalopathy.[9] I have considered that point in conducting my analysis of his hours spent researching and drafting his reports. In light of the above, I reduce Dr. Akbari's time by 20%, of hours billed, or 20% of 113.6, for a total of 22.72 hours.

Total costs for Dr. Akbari: **$45,440.00**. I also note that $2,500.00 of Dr. Akbari's retainer was a cost borne solely by Petitioners. Fees App. Ex. C at 1. Accordingly, this shall be awarded as a separate amount, in a check solely payable to Petitioners

      2.  Miscellaneous Costs

Petitioners request $87.56[10] for miscellaneous costs, including the costs of obtaining medical records, medical literature, and postage expenses. I have reviewed these expenditures and find them to be reasonable. I therefore award them in full.

Total miscellaneous costs to be awarded: $87.56.

Total costs to be awarded: **$45,527.56.**

### III. Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioners' application, as follows:

> A lump sum in the amount of **$71,701.96**, representing reimbursement of Petitioners' interim attorneys' fees and costs in the form of a check jointly payable to Petitioners and their former attorney, Ms. Carol Gallagher.
>
> A lump sum in the amount of **$2,500.00**, representing reimbursement of Petitioners' costs in the form of a check payable to Petitioners.

---

[9] I note that many of the articles of medical literature are not specific to encephalopathy and have been cited by Dr. Akbari in prior Vaccine Program cases.

[10] This amount does not include the retainers paid to the experts, which were evaluated and paid as part of the expert costs.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[11]

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master

---

[11] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.