# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 15-1380V

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * <br> ANSEL WALTERS *and* SHAKIMA DAVIS <br> WALTERS, *Natural Parents of K.S.S.W.*, a <br> minor, <br><br> Petitioner, <br><br> v. <br><br> SECRETARY OF HEALTH AND <br> HUMAN SERVICES, <br><br> Respondent <br> * * * * * * * * * * * * * * * * * * * * * * * * * | * <br> * <br> * TO BE PUBLISHED <br> * <br> * <br> * Special Master Katherine E. Oler <br> * <br> * Filed: February 23, 2022 <br> * <br> * Interim Attorneys' Fees and Costs <br> * <br> * |

*Phyllis Widman*, Widman Law Firm, LLC, Northfield, NJ, for Petitioner
*Wei Kit Tai*, U.S. Department of Justice, Washington, DC, for Respondent

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On November 16, 2015 Ansel Walters and Shakima Davis Walters ("Petitioners") filed a petition for compensation on behalf of their minor son K.S.S.W. under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq*.[2] (the "Vaccine Act" or "Program") alleging that K.S.S.W. suffered from encephalopathy as a result of the DTaP vaccine he received on January 16, 2013. Pet. at 1, ECF No. 1. At the time, Petitioners were represented by Ms. Carol Gallagher.

---

[1] This Decision will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). **This means the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

On August 3, 2020, Ms. Phyllis Widman was substituted in as Petitioner's counsel. ECF No. 102. A two-day entitlement hearing was held on January 21-22, 2021. ECF Nos. 133-134.

On July 2, 2021, Petitioners filed an application for interim attorneys' fees and costs, totaling $134,115.80. Fees App. at 3, ECF No. 141. On July 16, 2021, Respondent filed a response stating it is within my discretion to award interim attorneys' fees and costs. Fees Resp., ECF No. 143. Respondent "defers to [me] to determine whether or not petitioner here has met the legal standard for interim fees and costs award." *Id.* at 2.

For the reasons discussed below, I hereby **GRANT IN PART** Petitioners' application and award a total of **$121,343.70** in interim attorneys' fees and costs.

I.      Legal Standard

   A.  Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs if the special master finds that a petitioner has brought his petition in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148 (2012), at 154; *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more

than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

### B. Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### C. Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. Aug. 19, 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.*, 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II.   Discussion

### A.  Undue Financial Hardship

The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by petitioner's counsel. *Kirk*, 2013 WL 775396, at *2 (finding "the general principle underlying an award of interim fees was clear: avoid working a substantial financial hardship on petitioners and their counsel.").

Successive motions for awards of interim fees are typically disfavored absent compelling circumstances. *See e.g. Kottenstette v. Sec'y of Health & Hum. Servs.*, No. 15-1016V, 2019 WL 5709372, at *2 (Fed. Cl. Spec. Mstr. Oct. 11, 2019) (granting a second interim fee award only in light of a motion for review which would inevitably add "an indefinite period of…litigation

before…resolution of the case); *Heinzelman v. Sec'y of Health & Hum. Servs*, No. 07–01V, 2012 WL 1119389 (Fed. Cl. Spec. Mstr. Mar. 13, 2012) (Petitioner was not entitled to a third award of interim attorneys' fees because she failed to establish the special circumstances needed for such an award); *see also Otto v. Sec'y of Health & Hum. Servs.*, No. 16-1144, 2020 WL 1304189 (Fed. Cl. Spec. Mstr. Feb. 10, 2020) (holding that granting successive interim awards strains judicial resources and is contrary to the underlying intent of the Vaccine Act). To demonstrate undue hardship, a Petitioner must demonstrate a *compelling* reason for a successive award of interim fees and costs.

Although an award of interim fees has already been granted in this case, Petitioners had different counsel at that time. Accordingly, this is Petitioners' first interim fee application with respect to work performed by Ms. Widman. Petitioners and their counsel have been litigating this case for over seven years, and Ms. Widman has litigated on behalf of Petitioners through a costly hearing. To not pay fees and costs associated with the hearing would cause Ms. Widman significant undue hardship.

I also note that the COVID-19 pandemic has had a significant impact on the United States economy and such impact has been recognized by this court. *See Monge-Landry v. Sec'y of Health & Hum. Servs.*, No. 14-853V, 2020 U.S. Claims LEXIS 1250 at *14-15 (Fed. Cl. Spec. Mstr. Jun. 30, 2020) (recognizing the COVID-19 pandemic's continued disruption of the airline industry in its calculation of appropriate interim fees). Given these unprecedented economic circumstances, and the time already spent litigating this case, I find that the Petitioners would suffer undue hardship in the absence of a second award of attorneys' fees and costs.

### B. Good Faith and Reasonable Basis

Respondent has not raised any specific objection to the good faith or reasonable basis for this claim and leaves such a determination to my discretion. *See* Fees Resp. I find that the petition was filed in good faith.

As discussed above, the threshold for reasonable basis is a much lower standard than the burden to prove entitlement to compensation by preponderant evidence. In making a reasonable basis determination, I must look at a totality of circumstances, taking into account the factual basis for the claim, and the medical and scientific support offered. Petitioners have filed extensive medical records and a number of expert reports from Dr. Shafrir and Dr. Akbari. *See* Exs. 1-32, 35, 89, 143. The medical records and expert reports constitute sufficient evidence to justify the filing of this petition, thus I find the petition was filed with a reasonable basis.

As there is no other reason to deny the award of interim attorneys' fees and costs, I will award Petitioners' reasonable fees and costs in this instance.

### C. Attorneys' Fees

Petitioner requests a total of $75,581.25 in attorneys' fees. *See* Fees App. at 3.

1. <u>Reasonable Hourly Rate</u>

5

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

Petitioners' counsel, Ms. Phyllis Widman, requests to be compensated at a rate of $350.00 per hour for work performed in 2019 and $375.00 per hour for work performed in 2020-21. Additionally, Petitioners request an hourly rate of $175.00 per hour for travel costs. Fees App, Ex. A at 8. Ms. Widman's requested rate is consistent with *McCulloch* and with what she has been previously awarded in the Program. *See, e.g.*, *Solak v. Sec'y of Health & Hum. Servs.*, No. 18-1674V, 2021 U.S. LEXIS 1545 (Fed. Cl. Spec. Mstr. June 30, 2021). I find the requested rates reasonable and that no adjustment is warranted.

## 2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (same). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26.

Petitioners' counsel has provided a breakdown of hours billed and costs incurred. Second

---

[3] The 2015–2016 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf.
The 2017 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.
The 2018 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.

Fees App., Ex. A. I find the hours to be largely reasonable, however I find a reduction is necessary due to time billed for administrative/secretarial tasks such as organizing files and reviewing CM/ECF entries.

Billing for administrative tasks is not appropriate. *See Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature ... should be considered as normal overhead office costs included within the attorneys' fee rates"); *see also Mostovoy v. Sec'y of Health & Hum. Servs.*, No. 02-10, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016) (citing "reviewing invoices, setting up meetings, and making travel arrangements" as examples of administrative tasks); *Macrelli v. Sec'y of Health & Hum. Servs.*, No. 98–103, 2002 WL 229811, at *7 (Fed. Cl. Spec. Mstr. Jan. 30, 2002) (stating that "time spent performing secretarial tasks is to be subsumed in the overhead costs of practicing law and is not reimbursable"); *Isom v. Sec'y of Health & Hum. Servs.,* No. 94–770, 2001 WL 101459, at *2 (Fed. Cl. Spec. Mstr. Jan. 17, 2001) (agreeing with respondent that tasks such as filing and photocopying are subsumed under overhead expenses).

The entries from 2020-2021 that are of an administrative nature occur on 8/3/2020 (0.1 hours), 10/7/2020 (0.1 hours), 12/11/2020 (0.2 hours), 12/14/2020 (0.1 hours), 12/16/2020 (0.1 hours), 12/21/2020 (0.1 hours), 12/29/2020 (0.1 hours), 12/27/2020 (4.50 hours),[4] 12/28/2020 (2 entries totaling 0.2 hours), 12/30/2020 (three entries totaling 0.4 hours), 1/2/2021 (1.0 hours),[5] 1/4/2021 (0.4 hours),[6] 1/5/2021 (0.1 hours), 1/6/2021 (two entries totaling 0.2 hours), 1/8/2021 (0.1 hours), 1/15/2021 (three entries totaling 0.4 hours), 1/25/2021 (two entries totaling 0.2 hours), 1/29/2021 (0.1 hours), 2/25/2021 (0.1 hours), 3/23/2021 (0.1 hours), 5/25/2021 (0.1 hours) and 6/24/2021 (two entries totaling 0.2 hours) for a total reduction of 8.9 hours, or **$3,337.50.**

Total attorneys' fees to be awarded: **$72,243.75.**

**D. Reasonable Costs**

Petitioners request a total of $58,534.55 in costs, which includes obtaining medical records, medical literature, postage costs, the hearing transcript, and expert witness fees. Fees App. at 3.

1. Petitioners' Expert Costs for Dr. Omid Akbari

Petitioners request $32,835.00 for costs related to Dr. Akbari.

Petitioners request a rate of $550.00 per hour for work performed by Dr. Akbari for a total of $32,835.00. Dr. Akbari has a Ph.D. in molecular and cellular immunology. Ex. 90 at 1. He is a

---

[4] This billing entry reads "file organization." Organization of files is a secretarial task and is therefore not compensable.

[5] This billing entry reads "review of and organization of all photos and videos." Organizing photos is an administrative task and is therefore not compensable.

[6] This billing entry reads "filling out computer form and assistance to client and experts for the same." This work is administrative in nature and is therefore not compensable.

7

Professor of Medicine and a Professor of Immunology at University of Southern California, USC, Keck School of Medicine. *Id.* Additionally, Dr. Akbari is an active researcher in the field of immune tolerance in triggering an autoimmune disease. *Id.* at 3. Despite Dr. Akbari's qualifications in immunology, he is not a medical doctor and lacks clinical experience. Dr. Akbari has been consistently awarded a rate of $500/hour by other special masters in the Program. *See Hernandez v. Sec'y of Health & Hum. Servs.*, No. 16-1508V, 2018 WL 4391060 (Fed. Cl. Spec. Mstr. Aug. 20, 2018); *Shinskey v. Sec'y of Health & Hum. Servs.,* No. 15-713V, 2019 WL 2064558 (Fed. Cl. Spec. Mstr. May 9, 2019); *Sheppard v. Sec'y of Health & Hum. Servs.*, No. 17-819V, 2020 WL 1027958 (Fed. Cl. Spec. Mstr. Feb. 20, 2020); *Bisceglia v. Sec'y of Health & Hum. Servs.*, No. 19-91V, 2020 WL 6146101 (Fed. Cl. Spec. Mstr. Sep. 20, 2020); *Robinson v. Sec'y of Health & Hum. Servs.*, No. 15-967V, 2018 WL 5629850 (Fed. Cl. Spec. Mstr. Sep. 12, 2018); cf. *Riley v. Sec'y of Health & Hum. Servs.*, No. 16-262V, 2020 WL 1026929 (Fed. Cl. Spec. Mstr. Feb. 6, 2020) (granting Dr. Akbari an expert rate of $300.00 per hour); *Lewis v. Sec'y of Health & Hum. Servs.*, 15-907V, 2020 WL 1283461 (Fed. Cl. Spec. Mstr. Feb. 20, 2020) (reaffirming Dr. Akbari's expert hourly rate of $300.00 per hour). I find that $500 per hour, as has consistently been awarded to Dr. Akbari to be an appropriate hourly rate.

I also find that a reduction in hours is necessary, given the amount of hours Dr. Akbari has spent on this case. In addition to the 90 hours awarded him in the last interim fees decision, Dr. Akbari has requested another 59.7 hours for time spent on this case. Several of these hours include time spent on communication, reviewing deadlines, inserting exhibit numbers and references into a PowerPoint presentation, practicing use of WebEx, and a review of the record.[7] *See* Fees App. Ex. C at 7-8.

Fees for experts are subject to the same reasonableness standard as fees for attorneys. *See Baker v. Sec'y of Health & Hum. Servs.*, 99-653V, 2005 U.S. Claims LEXIS 64, 2005 WL 589431, at *1 (Fed. Cl. Spec. Mstr. Feb 24, 2005). Reviewing deadlines, inserting exhibit numbers and references into a PowerPoint, and practicing WebEx are considered administrative tasks and are not compensable in the Program. *See Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature ... should be considered as normal overhead office costs included within the attorneys' fee rates"). In addition, several of Dr. Akbari's entries read "e-mail communication with [Phyllis Widman], respond and review the reply." Fees App., Ex. C at 7-8. These types of entries are too vague to make a determination as to whether the time expended was reasonable and whether it should be compensated. *See Tetlock v. Sec'y of Health & Hum. Servs.*, No. 10-56V, 2017 U.S. Claims LEXIS 1473 (Fed. Cl. Spec. Mstr. Nov. 1, 2017).

In making reductions, a line-by-line evaluation of the fee application is not required. *Broekelschen v. Sec'y of Health & Hum. Servs.,* 102 Fed. Cl. 719, 729 (2011); *see also Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1991). Rather, special masters may "'render a decision based on general guidelines as to a reasonable fee'" in the context of the Vaccine Program

---

[7] I note that in the previous application for interim fees in this case, Dr. Akbari had already requested over 50 hours of time for reviewing medical records, medical literature, and expert reports (other than his own). Given that I have already found this time excessive, I will not compensate Dr. Akbari for further reviews of the record.

and in the context of this case in particular. *Wasson*, 24 Cl. Ct. at 484. Additionally, an expert should be compensated only for the number of hours reasonably expended by the expert. *King ex rel. King v. Sec'y of Health & Hum. Servs.*, No. 03–584V, 2010 WL 5470787, at *4 (Fed. Cl. Spec. Mstr. Dec. 13, 2010) (indicating that counsel had a "duty to 'monitor the expert's overall fees to ensure that the fees remain reasonable.'"); *Hines ex rel. Sevier v. Sec'y of Dep't of Health & Hum. Servs.*, 22 Cl. Ct. 750, 754 (1991) ("The special master is within his discretion in reducing hours that are duplicative, padded, spent on unrelated matters, or not 'reasonably expended.'" (quoting *Griffin & Dickson v. United States*, 21 Cl. Ct. 1, 11 (1990)).

In examining the totality of Dr. Akbari's work on this case, I find that it is excessive. Accordingly, I will reduce Dr. Akbari's requested time by 20%, for a total reduction of 11.94 hours. Based on my experience in reviewing similarly situated cases, I find that a 20% reduction is appropriate to account for the billing of administrative tasks, vague billing entries, and to reduce the hours billed to a more reasonable level.

Total costs for Dr. Akbari: **$23,880.00** ($500.00/hour x 47.76 hours).

2. Petitioners' Expert Costs for Dr. Yuval Shafrir

Petitioners request $23,980.00 in costs related to Dr. Yuval Shafrir. Petitioners request that Dr. Shafrir be compensated at a rate of $350.00 per hour for his work and $500.00 per hour for his time at hearing. Fees App. Ex. C at 4. Dr. Shafrir's proposed rate of $350/hour for work performed from May 2014 through September 2015 is reasonable, as is the $500/hour rate billed for his testimony during the hearing. Both rates are consistent with rates that special masters have awarded for neurologists. *See Brown v. Sec'y of Health & Hum. Servs.*, No. 09-426V, 2012 U.S. Claims LEXIS 272, 2012 WL 952268, at *10 (Fed. Cl. Spec. Mstr. Feb. 29, 2012) (awarding a neurologist $450-$500 per hour for work performed in 2009-2011). Additionally, those rates have been awarded previously for Dr. Shafrir's work. *See, e.g., Whitney v. Sec'y of Health & Hum. Servs.*, No. 10-809V, 2016 U.S. Claims LEXIS 1192, 2016 WL 4491499, at *6 (Fed. Cl. Spec. Mstr. July 27, 2016).

Dr. Shafrir billed for preparing his second report, preparing for the hearing, and attending the hearing. Fees App. at 4-5. I have reviewed the billing records and find that the time spent on these tasks is reasonable.

Several of Dr. Shafrir's entries are vague, and it is impossible to tell whether they reflect compensable time. In the future, Dr. Shafrir should take care to include more detail in his bills. For example, on several occasions, Dr. Shafrir billed for "e-mail correspondence with attorney." Fees App. Ex. C. at 5. These types of entries are too vague to make a determination whether the time expended was reasonable and whether it should be compensated. *See Tetlock v. Sec'y of Health & Hum. Servs.*, No. 10-56V, 2017 U.S. Claims LEXIS 1473 (Fed. Cl. Spec. Mstr. Nov. 1, 2017). Accordingly, I will reduce Dr. Shafrir's requested fees by **2%** for vague billing entries for a total reduction of **$479.60**. Future instances of poor billing practices will result in larger deductions.

Total costs for Dr. Shafrir: **$23,500.40.**

3. Petitioners' Miscellaneous Costs

Petitioners request $1,719.55 in costs for Federal Express, obtaining the transcript and obtaining medical records. I have reviewed the supporting documentation and find these costs to be reasonable. I accordingly award them in full.

Total miscellaneous costs to be awarded: **$1,719.55**.

Total costs to be awarded: **$49,099.95.**

### III. Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioners' application, as follows:

A sum in the amount of **$121,343.70**, representing reimbursement of Petitioners' fees and costs, in the form of a check jointly payable to Petitioners and Petitioners' attorney of record, Phyllis Widman.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[8]

**IT IS SO ORDERED.**

<u>s/ Katherine E. Oler</u><br>
Katherine E. Oler<br>
Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.